## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**SHOLA MCCARTHY,**

      **Petitioner,**

**v.**                            **Case No. 8:19-cv-2109-VMC-SPF**

**SECRETARY, DEPARTMENT**
**OF CORRECTIONS,**

      **Respondent.**
_____/

## ORDER

      Shola McCarthy, a Florida prisoner, timely filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.) Having considered the petition, the response in opposition (Doc. 8), and McCarthy's reply (Doc. 11), the Court **ORDERS** that the petition is denied.

## Background

      The State of Florida charged McCarthy with robbery in violation of § 812.13, Fla. Stat., a second-degree felony. (Doc. 8-2, Ex. 2.) The State enhanced the charge to robbery while using a police scanner in violation of §§ 812.13, 843.167, Fla. Stat., a first-degree felony. (*Id.*, Ex. 3.) The enhancement statute provides:

(1) A person may not:

(a) Intercept any police radio communication by use of a scanner or any other means for the purpose of using that communication to assist in committing a crime or to escape from or avoid detection, arrest, trial, conviction, or punishment in connection with the commission of such

crime.

§ 843.167(1)(a), Fla. Stat.

A state court jury convicted McCarthy of robbery and found that during the commission of the robbery, he used a police scanner. (*Id.*, Ex. 6.) The state trial court sentenced him to 27 years in prison. (*Id.*, Ex. 7.) The state appellate court *per curiam* affirmed McCarthy's conviction and sentence. (*Id.*, Ex. 15.)

The state appellate court also denied McCarthy's petition alleging ineffective assistance of appellate counsel, filed under Florida Rule of Appellate Procedure 9.141. (*Id.*, Exs. 19, 20.) McCarthy filed a motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800(a), which the state court denied. (*Id.*, Exs. 22, 23.) McCarthy also filed a motion for arrest of judgment under Florida Rule of Criminal Procedure 3.610. (*Id.*, Ex. 26.) The state court denied McCarthy's motion. (*Id.*, Ex. 27.) The state appellate court *per curiam* affirmed the denial. (*Id.*, Ex. 31.)

McCarthy sought postconviction relief under Florida Rule of Criminal Procedure 3.850. (Doc. 8-3, Ex. 33.) The state court granted an evidentiary hearing on one claim but summarily denied McCarthy's other claims. (*Id.*, Exs. 34, 36.) After the evidentiary hearing, the state court entered a final order denying postconviction relief. (*Id.*, Ex. 40.) The state appellate court *per curiam* affirmed. (*Id.*, Ex. 46.)

### Facts; McCarthy's Defense At Trial[1]

On August 2, 2013, McCarthy was driving near Lakeland, Polk County,

---

[1] This summary is based on the trial transcript and the appellate briefs.

Florida, when he realized that he could not afford the tolls on the highway. He used an app on his iPhone to find nearby bank locations. McCarthy parked in a residential area across the road from a Bank of America branch. As he sat in his car, McCarthy wrote a note. McCarthy entered the bank and presented teller Alicia Hinton with the note, which stated:

> Do not panic!
> Do not alert or set off any alarms!
> Give me all the cash!
> No mark bills [sic]
> No tracers
> No die apacks [sic]
> Put this note with the money.
> You have 45 sec Go!

(Doc. 8-3, Ex. 49.)

As Hinton gathered approximately $4,000 in cash to give to McCarthy, she inserted a GPS tracking device between two bills. When Hinton told McCarthy she did not have a bag to put the money in, he responded that that was okay. McCarthy took the money and left the bank. When he noticed a police car in traffic, he ran back to his vehicle, a Nissan Pathfinder. McCarthy began driving away. He opened the Radio Free app on his iPhone to search for police radio channels because he wanted to find out if police were looking for him. McCarthy did not know what city he was in, and so he used the "local scanner." (Doc. 8-2, Ex. 4, p. 204.) The Radio Free app did not pick up the channels used by either the Lakeland Police Department or the Polk County Sheriff's Office, the two local agencies who became involved in this case. Those agencies used digital communications that the app could not access.

However, the app picked up channels used by other law enforcement agencies. McCarthy heard some police discussion about a suspect vehicle and a Ford Explorer, and wondered whether police had the wrong type of vehicle. McCarthy was "a nervous wreck," so he changed his shirt while in his vehicle. (*Id.*, pp. 205-06.) Police used information from the GPS tracking device to find McCarthy's vehicle. Detective Jonathan Harkins conducted a traffic stop as McCarthy approached an on-ramp to I-4. Police found the money and note under the front seat of the car. When Deputy Jason Asbury looked in McCarthy's car, he observed a cell phone on the passenger's seat and could hear what sounded like a police dispatch coming from the phone. Detective Tim McDonald took McCarthy to the bank, where Hinton identified him as the man who had robbed her earlier that day. McCarthy made incriminating statements when Detective Nicole Cain interviewed him.

At trial, McCarthy did not deny that he was the perpetrator. He argued that the State's evidence only proved the lesser offense of theft because his actions did not cause Hinton to be in fear, as required to prove robbery. McCarthy also argued that he could not have used a police scanner during the robbery in violation of § 843.167(1)(a), Fla. Stat., which prohibits intercepting police radio communication "for the purpose of using that communication to assist in committing a crime or to escape from or avoid detection, arrest, trial, conviction, or punishment in connection with the commission of such crime." McCarthy argued that because he did not intercept communications of the involved law enforcement agencies, he could not have used police communication to escape or avoid detection.

## Standards Of Review

**The AEDPA**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*,

535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed McCarthy's conviction and sentence, denied his petition alleging ineffective assistance of appellate counsel, and affirmed the denial of postconviction relief without discussion. These decisions warrant deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018).

**Ineffective Assistance Of Counsel**

McCarthy alleges ineffective assistance of trial counsel and appellate counsel. Ineffective assistance of counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id.* at 687. Deficient performance is

established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

McCarthy must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. To demonstrate prejudice, McCarthy must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation marks and citations omitted); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013) (stating that this doubly deferential standard of review "gives both the state court and the defense attorney the benefit of the doubt."). "The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v.*

7

*Landrigan*, 550 U.S. 465, 473 (2007)).

The *Strickland* standard applies to claims of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991). To establish a claim of ineffective assistance of appellate counsel, McCarthy must show that appellate counsel's performance was objectively unreasonable, and that there is a reasonable probability that, but for this performance, he would have prevailed on his appeal. *Robbins*, 528 U.S. at 285-86.

### Exhaustion of State Remedies; Procedural Default

A federal habeas petitioner must exhaust his claims in state court before presenting them in his federal habeas petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the petitioner fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the

conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999).

In recognizing a narrow exception to the rule that an attorney's error in a postconviction proceeding does not constitute cause for a procedural default, the Supreme Court has held:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Martinez v. Ryan*, 566 U.S. 1, 17 (2012).

To establish cause under *Martinez*, a petitioner must demonstrate that the defaulted ineffective assistance of trial counsel claim "is a substantial one, which is to say that [he] must demonstrate that the claim has some merit." *Id.* at 14. A claim that does not have any merit or that is wholly without factual support is not substantial. *See id.* at 15-16.

## Discussion

### Ground One

McCarthy argues that the state trial court erred in denying his motion for judgment of acquittal. McCarthy's motion for judgment of acquittal challenged the

sufficiency of the State's evidence, asserting that the State failed to prove a prima facie case of robbery. (Doc. 8-2, Ex. 4, pp. 245-46, 252-54.)

Respondent contends that this claim is defaulted because McCarthy failed to exhaust its federal nature on appeal. When McCarthy challenged the sufficiency of the evidence on appeal, he referenced his federal due process rights and cited federal authority in support of his argument. (Doc. 8-2, Ex. 13, p. 18.) Respondent contends that these references to federal law were too cursory to exhaust a federal claim. After reviewing McCarthy's appellate brief, the Court will presume that the brief was sufficient to exhaust a federal due process challenge.

The sufficiency of the evidence standard asks whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Thus, a federal habeas petitioner "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* at 324. On federal habeas review, this standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. If the record contains facts supporting conflicting inferences, a federal habeas court must presume that the state court jury resolved any such conflicts in the prosecution's favor. *Id.* at 326.

To establish robbery, the State had to prove beyond a reasonable doubt that McCarthy took money from the custody of another, with the intent to "either

10

permanently or deprive" that person of the money, and that "in the course of the taking there [was] the use of force, violence, assault, or putting in fear." § 812.13(1), Fla. Stat. If the circumstances were such as to ordinarily induce fear in the mind of a reasonable person, then a victim may be found to have been in fear, and actual fear on the part of a victim need not be shown. *See Magnotti v. State*, 842 So.2d 963, 965 (Fla. 4th DCA 2003); *Smithson v. State*, 689 So.2d 1226. 1228 (Fla. 5th DCA 1997); *see also* Fla. Std. Jury Instr. (Crim.) 15.1. The fear contemplated by the robbery statute is the fear of death or great bodily harm. *See Magnotti*, 842 So.2d at 965.

McCarthy fails to establish that no rational juror could have found proof of the elements of robbery beyond a reasonable doubt. McCarthy did not contest that the evidence showed he took money from Hinton with the intent to permanently or temporarily deprive her of the money. Rather, he challenged the evidence supporting the "putting in fear" element of robbery.

The State's evidence was sufficient to show that "putting in fear" was used during the course of the offense. Although Hinton testified that she did not feel afraid during the robbery, the State only had to prove that the circumstances would ordinarily induce fear of death or great bodily harm in the mind of a reasonable person.

The jury could have concluded that the note itself was of a threatening nature because it gave Hinton a 45-second deadline to produce cash. Furthermore, the note said not to panic, which could be taken to indicate that something that would usually cause panic was happening. McCarthy's act of writing the note beforehand showed that the robbery was planned. Additionally, Hinton testified that she did not know

whether McCarthy had a weapon because he kept one hand in his pocket. (Doc. 8-2, Ex. 4, p. 128.) A reasonable person could have believed that McCarthy might have had a weapon in his pocket. *See, e.g.*, *Brown v. State*, 397 So.2d 1153, 1155 (Fla. 5th DCA 1981) (stating that a defendant's act of "keeping his hands out of the victim's sight" such that the bank teller could not determine whether he had a weapon was "undoubtedly intended to intimidate the victim into parting with the bank's money").

In *State v. Baldwin*, the court determined that although the perpetrator of a bank robbery did not make explicit threats or display a weapon, the circumstances were sufficient to induce fear in the mind of a reasonable person because the perpetrator's disguise and pre-written note indicated he planned the robbery in advance, the crime took place during normal business hours at a bank, and a bank is known to store large amounts of cash and to take significant security precautions. 709 So.2d 636, 638 (Fla. 2d DCA 1998). The court in *Baldwin* concluded that as "a reasonable person could fear that someone brazen enough to plan and execute a daylight theft from a bank, at the risk of severe or even fatal injury, would have armed himself in advance. Thus . . . the fact that the perpetrator did not openly display a weapon was not as important as the teller's inability to discern that he did not possess one." *Id.*; *see also Magnotti*, 842 So.2d at 964-65 (stating that the circumstances would ordinarily induce fear in the mind of a reasonable person when the perpetrator in a bank robbery told the teller that it was a hold up and he wanted money, and the teller could not determine if the person had a weapon, even though the teller was behind bullet-proof glass).

McCarthy has not established that, considering the evidence in the light most

favorable to the State, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. *See Jackson*, 443 U.S. at 324. He does not show that the state court's rejection of his sufficiency of the evidence claim was contrary to or involved an unreasonable application of clearly established federal law, or was based on an unreasonable factual determination. McCarthy is not entitled to relief on Ground One.

**Ground Two**

McCarthy argues that the trial court erred when it overruled a defense objection to a statement by the prosecutor and denied the defense's request for a curative instruction. The Court finds that McCarthy's claim is not cognizable in this § 2254 proceeding because he does not clearly allege a violation of his federal rights. *See* 28 U.S.C. § 2254(a). Furthermore, even if his petition could be liberally construed as raising a federal constitutional claim, any such claim is unexhausted. When McCarthy raised this claim of trial court error on direct appeal, he only presented a question of state law. (Doc. 8-2, Ex. 13, pp. 21-30.) Accordingly, McCarthy failed to satisfy the exhaustion requirement. *See Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 457 (11th Cir. 2015) ("The crux of the exhaustion requirement is simply that the petitioner must have put the state court on notice that he intended to raise a federal claim.").

McCarthy cannot return to state court to raise a federal claim in a successive, untimely appeal. *See* Fla. R. App. P. 9.140(b)(3) (stating that a notice of appeal must be filed within 30 days of the rendition of the sentence). Any federal claim contained in Ground Two is procedurally defaulted. *See Smith*, 256 F.3d at 1138. McCarthy does not show that an exception applies to overcome the default. *See id.* Therefore, Ground

Two is barred from federal habeas review.

**Ground Three**

McCarthy argues that the trial court erred in denying his motion for arrest of judgment. In that motion, McCarthy claimed that he was convicted of a non-existent offense in violation of his federal due process rights. Specifically, he contended that there was "no such crime in the entire Florida Statute[s] as robbery while using a police scanner."

(Doc. 8-2, Ex. 26, p. 1.) The state court denied McCarthy's motion:

> Defendant claims that he was convicted and sentenced for a non-existent crime. The record indicates that the Defendant was charged with Robbery pursuant to Fla. Stat. 812.13, a second degree felony. His charge was enhanced pursuant to Fla. Stat. 843.167 as it was alleged that the Defendant used a police scanner during the commission of the crime. Therefore, his charge was enhanced from a second degree felony to a first degree felony. The Court finds that the charge, Robbery while using a police scanner, does exist.

(Doc. 8-2, Ex. 27.)

McCarthy does not show entitlement to relief. The state court found that robbery while using a police scanner is an offense under Florida law. This Court must defer to the state court's finding in ruling on McCarthy's claim. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("[I]t is not province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) (stating that the Supreme Court "repeatedly has held that state courts are the ultimate expositors of state law"); *McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992) ("A state's interpretation of its own laws or rules provides no basis for

federal habeas corpus relief, since no question of a constitutional nature is involved."). As the state court has determined that the offense of conviction existed under state law, this Court must reject McCarthy's claim that he was convicted of a non-existent offense.

McCarthy has not established that the state court's ruling was contrary to or involved an unreasonable application of clearly established federal law, or was based on an unreasonable factual determination. Accordingly, he is not entitled to relief on Ground Three.

**Ground Four**

McCarthy argues that trial counsel was ineffective for not investigating the charged offense and failing to challenge it as a non-existent offense. The state court denied this claim when McCarthy raised it in his postconviction motion. The court noted that it had already found in denying McCarthy's motion for arrest of judgment that robbery while using a police scanner exists as a crime under Florida law. (Doc. 8-3, Ex. 34, p. 1.)

This ineffective assistance claim turns on an underlying issue of state law: whether robbery while using a police scanner is a crime under Florida law. The state court determined that the offense exists in Florida, and this Court must defer to this conclusion in determining whether the state court unreasonably denied McCarthy's ineffective assistance claim. *See Pinkney v. Secretary, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017) ("[A]lthough 'the issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension,' [a

federal court] 'must defer to the state's construction of its own law' when the validity of the claim that . . . counsel failed to raise turns on state law." (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984))); *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) ("[T]he Alabama Court of Criminal Appeals has already answered the question of what would have happened had [petitioner's counsel] objected to the introduction of [petitioner's] statements based on [state law] – the objection would have been overruled. . . . Therefore, [petitioner's counsel] was not ineffective for failing to make that objection.").

McCarthy cannot show that trial counsel was ineffective for not raising a meritless claim, or that he was prejudiced by counsel's performance. *See Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."). Because McCarthy does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim, he is not entitled to relief on Ground Four.

**Ground Five**

McCarthy argues that trial counsel was ineffective for not properly preparing for trial. He appears to contend that counsel did not have sufficient time to prepare because counsel assumed representation shortly before the trial date.

The state court summarily denied McCarthy's claim:

In claim 2 Defendant argues that trial counsel was denied adequate time to prepare for the trial. Defendant states in a conclusory manner that trial counsel did not have enough time to prepare. However, Defendant gives

no specific examples of how trial counsel could have been better prepared. Also, the record does reflect that counsel requested a continuance on February 26, 2014. That request was denied. The State even asked for a continuance on the eve of trial but that request was also denied. Trial counsel had no choice but to proceed to trial. Defendant has failed to establish deficient performance or prejudice.

(Doc. 8-3, Ex. 34, pp. 1-2.) (state court's record citation omitted)

The state court did not unreasonably apply *Strickland* in denying McCarthy's claim. The state court noted that the trial court denied counsel's request for a continuance, which McCarthy does not contest. In addition, McCarthy does not clearly assert how counsel's representation would have been different had counsel had more time to prepare for trial. Rather, McCarthy contends in a generalized way that if counsel had fully investigated the facts, he likely would have been acquitted. (*See* Doc. 8-3, Ex. 33, pp. 6-8.) McCarthy's claim is therefore too speculative to warrant federal habeas relief. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (stating that a petitioner's "unsupported allegations" that are "conclusory in nature and lacking factual substantiation" cannot sustain an ineffective assistance claim).

McCarthy does not establish that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim. He is not entitled to relief on Ground Five.

**Ground Six**

McCarthy contends that trial counsel was ineffective for not requesting a hearing under *Richardson v. State*, 246 So.2d 771 (Fla. 1971). *Richardson* holds that a state trial court must inquire into the circumstances surrounding a discovery violation

and determine whether any violation prejudiced the defendant. *Id.* at 774-75.

At trial, Detective Jason Leggett demonstrated how to use the Radio Free app using an iPhone that he provided from the police department (the "demo phone"). (Doc. 8-2, Ex. 4, p. 234.) Detective Leggett testified that he used the demo phone because he did not want to contaminate McCarthy's phone, which was in evidence. (*Id.*) Detective Leggett testified that the demo phone and McCarthy's phone were similar iPhones, but were different models. (*Id.*, pp. 234, 236.) He testified that the difference between the models did not "matter as far as the Radio Free app." (*Id.*, p. 236.) Detective Leggett testified that the app as shown to the jury on the demo phone was also available on McCarthy's phone. (*Id.*, p. 237.)

McCarthy asserts that the State violated discovery by failing to inform the defense that Detective Leggett would use a demo phone instead of McCarthy's phone. The state court denied McCarthy's claim:

> In claim 3 Defendant argues that trial counsel should have requested a Richardson hearing. Defendant claims that the State should have disclosed that they would have Det. Jason Leggett use a demo phone to connect to the police scanner application. Defendant claims that had he known a different phone would be used at trial, he would have called an expert witness who would have testified that . . . the two iPhones were different. The Court does not find that a discovery violation has occurred. Also, the Court finds that the Defendant himself admitted to Det. Cain that he used the scanner application after the robbery to find out if the police were on to him. When Dep. Jason Asbury approached the Defendant's vehicle after Defendant's arrest, he heard police dispatch through the Defendant's phone. Based on the above the Defendant has failed to establish deficient performance or prejudice.

(Doc. 8-3, Ex. 34, p. 2.) (state court's record citation omitted)

McCarthy does not show that the state court unreasonably denied his claim.

The state court determined that the prosecution did not commit a discovery violation by allegedly failing to inform the defense that Detective Leggett would use the demo phone to show the jury the Radio Free app. This finding involves a determination of state law governing discovery in state court. This Court must defer to the state court's conclusions on a matter of state law in assessing the reasonableness of the state court's rejection of McCarthy's ineffective assistance claim. *See Pinkney*, 876 F.3d at 1295; *Callahan*, 427 F.3d at 932. As addressed, counsel is not ineffective for failing to raise a meritless issue. *See Bolender*, 16 F.3d at 1573.

Furthermore, as the state court observed, McCarthy admitted to using to using the Radio Free app for the purpose of finding out whether the police had any information about him, including a description of the vehicle he was driving. In addition, McCarthy does not specifically explain how any differences between his phone and the demo phone affected Detective Leggett's demonstration or led to the introduction of inaccurate information. This speculative claim does not warrant federal habeas relief. *See Tejada*, 941 F.2d at 1559.

McCarthy has not established that the state court's ruling involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination. He is not entitled to relief on Ground Six.

**Ground Seven**

McCarthy asserts that trial counsel was ineffective for failing to object to prosecutorial misconduct. To prove robbery, the State needed to establish that in the course of the taking, "putting in fear" was used. *See* § 812.13(1), Flat. Stat. Alicia

Hinton, the bank teller, testified at trial that she was nervous during the incident but that she was not afraid. McCarthy asserts that the prosecutor improperly argued during rebuttal closing that nervousness amounts to fear.

In addition, McCarthy contends that the prosecutor improperly argued that he illegally intercepted police communication even though the communication was not from an agency pursuing him. The prosecutor stated:

> If the defendant intercepted any - - again, not the ones that were chasing him, any police communication by use of a scanner or any other means for the purpose - - purpose of using that communication to aid in his escape, to assist in his escape. It was his purpose. That's the issue, not his success. It's not whether he was effective at it.

(Doc. 8-2, Ex. 4, pp. 289-90.)

Finally, McCarthy contends that his copy of the trial transcript was altered and was not an accurate record of the proceedings. He claims that trial counsel was ineffective for not reviewing the trial transcripts and discovering the alleged alterations. The state court denied McCarthy's claim:

> In claim 4 Defendant argues that trial counsel was ineffective for failing to object to prosecutorial misconduct during closing argument by the State. Defendant argues that the State improperly argued that nervousness constitutes fear and that Defendant is guilty of using a police scanner even if he did not intercept communication from the agency pursuing him. Upon reading the rebuttal closing argument of the State, the Court does not find that the State argued that nervousness is a type of fear. The Court further finds that the State argued that Defendant attempted to use the police scanner to aid in his escape. Defendant has failed to establish prosecutorial misconduct. As far as Defendant's claim that the transcript is incorrect, the Court can only go by what is in the record.

(Doc. 8-3, Ex. 34, p. 2.) (state court's record citation omitted)

McCarthy does not show entitlement to relief. As the state court noted, the prosecutor did not argue in rebuttal closing argument that the teller's nervousness was sufficient to establish fear. (Doc. 8-2, Ex. 4, pp. 288-91.) Although McCarthy contends that the trial transcript is not accurate, he does not offer any evidence to support this conclusory assertion. Thus, this portion of McCarthy's ineffective assistance claim is too speculative to warrant relief. *See Tejada*, 941 F.2d at 1559. The state court record shows that the prosecutor did not argue about Hinton's nervousness during the rebuttal closing argument and did not make the argument McCarthy claims.[2]

Further, as the state court observed, the prosecutor argued that the law only requires that McCarthy intercepted some police communication, not necessarily communication of the particular agencies looking for him. This reflects the State's theory as to how the police scanner enhancement applied in McCarthy's case, and also appears to have been made in response to the defense's argument that the scanner enhancement should not apply because McCarthy did not in fact utilize communications of the involved law enforcement agencies. (*Id.*, pp. 282-85.) For the reasons addressed in Ground Ten, *infra*, McCarthy does not establish that this was an improper or unreasonable interpretation of the statute. Nor does he show that trial counsel was ineffective for not objecting to it.

In addition, the jurors were instructed that they must decide the case based on

---

[2] In support of his claim, McCarthy also asserts that the prosecutor misstated what type of fear must be shown. (Doc. 8-3, Ex. 33, pp. 12-13.) But as McCarthy acknowledges, counsel objected to the prosecutor's statement and sought a curative instruction. (Doc. 8-2, Ex. 4, pp. 290-91, 311-13.)

the law as provided by the court and that they must follow the law as set out in the instructions. (Doc. 8-2, Ex. 5, p. 355.) The jurors are presumed to have done so. *See United States v. Brown*, 983 F.2d 201, 202 (11th Cir. 1993) (recognizing the "well-recognized presumption that a jury follows its instructions"). McCarthy does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim. He is not entitled to relief on Ground Seven.

**Ground Eight**

McCarthy argues that trial counsel was ineffective for agreeing to jury instructions regarding the police scanner and the victim's being in fear. The state court denied McCarthy's claim:

> In claim 5 Defendant argues that trial counsel was ineffective for acquiescing to the jury instructions regarding the police scanner and fear. The Court finds that a lengthy discussion took place regarding the instruction on intercepting a police communication. The Court found that the instruction should mirror the statute. The instruction informed the jury that Defendant must have used the communication for the purpose of using that communication to assist in his escape. Defendant also argues that the definition of fear was not clear. The Court finds that the standard instruction on robbery was given.

(Doc. 8-3, Ex. 34, p. 2.) (state court's record citations omitted)

McCarthy does not show that the state court unreasonably denied his claim. As the state court observed, the trial court and parties engaged was a lengthy discussion about the scanner instruction, for which there is no standard jury instruction. The State proposed an instruction that paraphrased the statute. Counsel did not agree with the State's proposed instruction because he believed that it erroneously suggested that the mere interception of police communication is a crime. (Doc. 8-2, Ex. 4, p. 185-86.)

Counsel believed that the State's proposed instruction did not adequately inform the jury that the crime involves intercepting police communication for the purpose of evading detection or prosecution. (*Id.*, p. 186.) Counsel prevailed in his argument that the instruction should track the exact language of the statute. (*Id.*, p. 187.) McCarthy does not assert what other version of an instruction counsel should have proposed to the trial court, or establish how counsel performed deficiently in making the argument that he did.

Additionally, as the state court observed, the robbery instruction was consistent with the standard jury instruction. (Doc. 8-2, Ex. 5, pp. 346-47.) *See* Fla. Std. Jury Instr. (Crim.) 15.1. McCarthy does not establish that counsel was ineffective for not objecting to the use of this standard instruction. "[T]rial counsel's failure to object to standard jury instructions that have not been invalidated by [the Florida Supreme Court] does not render counsel's performance deficient." *Thompson v. State*, 759 So.2d 650, 665 (Fla. 2000).

McCarthy does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in ruling on his claim. Ground Eight warrants no relief.

**Ground Nine**

McCarthy contends that trial counsel was ineffective for misadvising him about a favorable plea agreement and for failing to inform him of the maximum sentence he faced upon conviction. As addressed, the State initially charged McCarthy with robbery under § 812.13, Fla. Stat., a second-degree felony. The maximum penalty for

23

a second-degree felony in Florida is 15 years in prison. § 775.082(3)(d), Fla. Stat. The State amended the robbery charge to include an enhancement for use of a police scanner under §§ 843.167, Fla. Stat., rendering the offense a first-degree felony. *See* § 843.167(3)(d) (providing that second-degree felony shall be punished as a first-degree felony if the offender violates § 843.167(1)(a)). The maximum penalty for a first-degree felony in Florida is 30 years. § 775.082(3)(b)1., Fla. Stat. McCarthy contends that he would have accepted the State's plea offer if he had known that the maximum prison term he faced upon conviction was 30 years, not 15 years.

The state court conducted an evidentiary hearing on this claim. McCarthy, his first attorney Beth Sammons, and his subsequent attorney Adam Stohler (who tried the case) all testified. McCarthy testified that neither attorney informed him that he faced a maximum term of 30 years in prison for the charge as amended. (Doc. 8-3, Ex. 39, pp. 73-74.) McCarthy recalled receiving three plea offers from the State: an initial offer for 15 years in prison; a second offer for 10 years in prison followed by five years on probation; and a final offer for five years in prison followed by 10 years on probation. (*Id.*, pp. 14, 19-20.) McCarthy testified that he rejected the offers because they all involved what he believed to be the maximum possible punishment of 15 years. (*Id.*, pp. 15, 19-20, 22-23.) McCarthy stated that if he had known he faced 30 years, not 15 years, he would have accepted one of the plea offers. (*Id.*, pp. 22-23, 26.) McCarthy testified that he reviewed a sentencing guidelines scoresheet that showed the maximum penalty as 15 years. (*Id.*, p. 15.)

McCarthy testified that it was "possible" he received a copy of a court order

denying a motion for bond that stated the charge had been amended to a first-degree felony. (*Id.*, p. 28.) McCarthy also conceded he sent a letter to the trial court arguing that he did not believe the police scanner enhancement was proper in his case. (*Id.*, pp. 31-32.) McCarthy further agreed that the sentencing hearing transcript showed that he said at the hearing he believed the State would drop the charge from a first-degree felony to a second-degree felony. (*Id.*, p. 35.) But he maintained that he did not know the maximum penalty for a first-degree felony was 30 years in prison. (*Id.*, pp. 28, 35.)

Sammons testified that she discussed the case at length with McCarthy. (*Id.*, p. 44.) She testified that she told McCarthy on several occasions that the maximum sentence was 30 years. (*Id.*, p. 45.) They discussed the enhancement for use of a police scanner and she told him that the offense was reclassified as a first-degree felony punishable by up to 30 years in prison. (*Id.*) Sammons testified that she was confident McCarthy understood her when she discussed the 30-year maximum sentence with him. (*Id.*, pp. 46, 55-56.) Sammons testified that they discussed how the police scanner enhancement, which they "wanted to fight," affected the case and that Sammons did not "think [McCarthy] ever really thought [the enhancement] would apply." (*Id.*, pp. 45, 52.) Sammons recalled that the State's offer was for 15 years in prison. (*Id.*, p. 48.) She testified that McCarthy was not receptive to that offer and that he was interested in probation. (*Id.*)

Stohler testified that he and McCarthy discussed the police scanner enhancement and that he informed McCarthy he faced a 30-year maximum term. (*Id.*,

p. 61.) Stohler testified that his notes showed he talked to McCarthy about the 30-year maximum at least four times. (*Id.*) Stohler recalled that the State's final plea offer was for eight years in prison, followed by seven years on probation. (*Id.*, pp. 61-62.)

Stohler testified that when he reviewed the offers with McCarthy, he reminded McCarthy that he faced 30 years. (*Id.*, pp. 62, 68.) Stohler testified that he believed McCarthy "absolutely" knew that he faced 30 years in prison. (*Id.*, p. 64.) Further, Stohler informed McCarthy that he was likely to receive the maximum term upon conviction. (*Id.*, pp. 65, 71.) Stohler testified that even though the scoresheet that McCarthy saw indicated the charge was a second-degree felony, McCarthy was well aware he faced 30 years upon conviction. (*Id.*, pp. 70-71.) Stohler also testified that he and McCarthy discussed theories regarding the scanner enhancement, as well as arguing for a lesser offense of theft, and that Stohler believed the more promising argument was that the scanner enhancement did not apply. (*Id.*, pp. 63-64.) Stohler testified that McCarthy believed the enhancement was not appropriate in this case. (*Id.*, p. 69.)

> The state court denied McCarthy's claim:
>
> At the evidentiary hearing the Defendant and trial counsels Beth Arreguin Sammons and Adam Stohler appeared as witnesses and the Court heard arguments from the parties. Defendant was initially charged with Robbery, a second degree felony. Less than one month later the Information was amended to Robbery While Using a Police Scanner, a first degree felony.
>
> At the evidentiary hearing, the Defendant testified that he believed that he was charged with a second degree felony leading up to trial and that his attorneys never told him that he was facing an enhancement for use of a police scanner or that he faced a potential sentence of thirty years in

prison. Defendant received several plea offers leading up to trial that amounted to about fifteen years with varying amounts of prison/probation time. Defendant rejected these offers as he believed that fifteen years was the maximum sentence. Defendant received a copy of his scoresheet and the sentencing range showed 24 months up to fifteen years. At sentencing, the Court corrected the scoresheet and sentenced the Defendant to 27 years in Florida State Prison. Had Defendant known he could receive up to thirty years, he would have accepted the State's offer. On cross examination Defendant acknowledged that he received an Order from the Court after a bond hearing in which the Court wrote that the Information was amended and that the charge was a first degree felony. Defendant wrote a letter to the Court, filed on March 6, 2014, in which he contested the police scanner enhancement and requested that he be permitted to plead to a lesser charge. At sentencing, Defendant again stated that he had hoped that the State would drop the scanner enhancement bringing the charge down to a second degree felony.

Beth Arreguin Sammons testified that she initially represented the Defendant. She has been a practicing attorney for over ten years. Ms. Sammons met with the Defendant and discussed discovery. On several occasions she told the Defendant that he faced up to thirty years in prison due to the police scanner enhancement.

Adam Stohler took over the case from Ms. Sammons. He discussed trial strategy with the Defendant and advised Defendant, on at least four occasions, that he faced up to thirty years in prison. Defendant wanted a probation offer which was not extended by the State. Defendant rejected all offers made by the State.

The Court finds, based upon the letter written by the Defendant, assertions made at sentencing, and the bond order issued by the Court, the Defendant was aware that he was charged with a first degree felony. Both Ms. Sammons and Mr. Stohler told the Defendant that he faced a maximum of thirty years in prison due to the enhancement. The Court finds that instead of accepting the State's offers, the Defendant proceeded to trial with the intention of contesting the police scanner enhancement.

(Doc. 8-3, Ex. 40, pp. 1-3.) (state court's record citations omitted).

McCarthy does not show entitlement to relief. A criminal defendant's Sixth Amendment right to the effective assistance of counsel extends to the plea-bargaining

process. *See Lafler v. Cooper*, 566 U.S. 156, 162 (2012). McCarthy does not establish that his attorneys were ineffective for failing to inform him that he faced a maximum term longer than any of the plea offers made to him. The state court set out the conflicting evidentiary hearing testimony and found that both attorneys told McCarthy that he faced a maximum of 30 years in prison based on the police scanner enhancement.

This finding involves an implicit determination that the attorneys' testimony was more credible than McCarthy's testimony. That credibility determination is a finding of fact that is presumed correct. *See Rolling v. Crosby*, 438 F.3d 1296, 1301 (11th Cir. 2006) (stating that "[t]he factual findings of the state court, including the credibility findings, are presumed to be correct"); *see also Consalvo v. Sec'y, Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) ("Federal courts have no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court but not by them. We consider questions about the credibility and demeanor of a witness to be questions of fact.") (internal quotation marks and citations omitted). McCarthy has not overcome the presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1) (stating that a habeas petitioner has "the burden of rebutting the presumption of correctness [afforded to a state court's factual determination] by clear and convincing evidence").

The testimony the state court found credible shows that both attorneys informed McCarthy he faced 30 years in prison. In addition, McCarthy fails to show that the state court unreasonably found that he was aware his charge had been enhanced to a

first-degree felony and that he intended to challenge the police scanner enhancement at trial. McCarthy does not show that his attorneys provided ineffective assistance for failing to advise him of the maximum term he faced when he was considering whether to accept the State's plea offers. Because McCarthy does not show that the state court's ruling involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination, he is not entitled to relief on Ground Nine.

**Ground Ten**

McCarthy argues that appellate counsel was ineffective for failing to challenge the sufficiency of the evidence used to support the enhancement of penalties for interception of police communications under § 843.167(1)(a), Fla. Stat. McCarthy contends that appellate counsel should have argued that the evidence showed only that he attempted to intercept police communications, but that there was no evidence he actually intercepted any police communications to aid in an escape, and that he was unable to intercept local police communications.

McCarthy raised this claim in a petition alleging ineffective assistance of appellate counsel. (Doc. 8-2, Ex. 19, pp. 6-10.) The state appellate court denied his petition without discussion. (Doc. 8-2, Ex. 20.) Therefore, this Court must consider what arguments or theories could have supported the state court's decision. *See Richter*, 562 U.S. at 102.

The state appellate court did not unreasonably deny McCarthy's claim. The enhancement statute states in relevant part:

(1) A person may not:

> (a) Intercept any police radio communication by use of a scanner or any
> other means for the purpose of using that communication to assist in
> committing a crime or to escape from or avoid detection, arrest, trial,
> conviction, or punishment in connection with the commission of such
> crime.

§ 843.167(1)(a), Fla. Stat.

Based on the statutory language, appellate counsel could have reasonably concluded that the evidence was sufficient to establish that McCarthy acted in violation of § 843.167(1)(a), Fla. Stat. Appellate counsel could have concluded that the statute applies when a defendant intercepts any police radio communication, not just local police radio communication, for the purpose of escaping or avoiding detection or punishment upon commission of a crime. The statute does not require that the defendant successfully intercept communications that in fact aided him.

Deputy Asbury testified that when he looked in McCarthy's car, he heard a voice coming from a cell phone on the passenger's seat and that the voice sounded like a police dispatch. (Doc. 8-2, Ex. 4, pp. 170-74.) Moreover, McCarthy admitted using an app on his phone to determine if police had a description of his vehicle. (*Id.*, pp. 202-05.) He did not know what city he was in, and he "just hit the local scanner." (*Id*, p. 204.) When McCarthy heard something in "codes" about a suspect vehicle and a Ford Explorer, he thought maybe police had the wrong vehicle. (*Id.*, pp. 205-06, 210-11.) Detective Leggett conducted a forensic examination of McCarthy's phone and found that the Radio Free app had been used that morning. (*Id.*, pp. 230-32.) Detective Leggett testified while the app did not pick up local police channels, by broadening the

range, it picked up channels from other law enforcement agencies in the area. (*Id.*, pp. 240-41.)

Based on the totality of this evidence, as applied to the statute, appellate counsel could have reasonably concluded that the evidence was sufficient to support the enhancement under § 843.176(1)(a), Fla. Stat. Therefore, the state appellate court could have reasonably determined that appellate counsel did not perform deficiently for failing to challenge that evidence on direct appeal and that McCarthy was not prejudiced by appellate counsel's performance.

McCarthy does not show that the state appellate court's decision was contrary to or involved an unreasonable application of clearly established federal law or was based on an unreasonable factual determination. McCarthy is not entitled to relief on Ground Ten.

**Ground Eleven**

McCarthy claims that appellate counsel was ineffective for failing to argue that the prosecutor misstated the law on "putting in fear" during the rebuttal closing argument. The prosecutor stated, in discussing the jury instructions and the elements of the offense:

> The other thing I wanted to show you about this is the element that we have to prove, as far as putting in fear, are these four things. They admit one, three and four, so defense counsel argued number two, putting in fear. And then he says, well, it has to be fear of great bodily harm or death. That's not what this part talks about.
>
> [DEFENSE COUNSEL]: Objection, misstatement of the law.
>
> THE COURT: Overrule the objection. You may proceed with

31

your argument.

      [PROSECUTOR]: You can read this part. This part talks about resistance and that the law doesn't require resistance. It doesn't tell you what kind of fear it has to be.

Again, you will have these back there and you can go through them and look at them as much as you want to.

(Doc. 8-2, Ex. 4, pp. 290-91.)

Later, counsel unsuccessfully sought a curative instruction based upon the prosecutor's alleged misstatement of the law. (*Id.*, pp. 311-13.)

Appellate counsel did argue that the trial court erred in overruling the defense objection and denying the request for a curative instruction. (Doc. 8-2, Ex. 13, pp. 21-30.) Therefore, to the extent McCarthy intends to argue that appellate counsel should have argued about the misstatement of the law concerning what type of fear the State must prove, his claim is refuted by the record. Appellate counsel made the argument that McCarthy claims appellate counsel should have raised.

It appears that McCarthy also intends to argue that appellate counsel should have asserted that the prosecutor misstated the law by stating that the teller's nervousness was enough to establish the fear necessary to prove robbery. (*See* Doc. 8-2, Ex. 19, pp. 13-15.) As addressed in Ground Seven, *supra*, however, the record does not show any such argument by the prosecutor, and McCarthy presents no evidence in support of his related assertion that the trial transcript was altered. Accordingly, McCarthy fails to demonstrate that appellate counsel was ineffective for not raising a challenge about a statement that was not contained in the trial transcript.

McCarthy does not show that the state appellate court's denial of his claim was contrary to or involved an unreasonable application of clearly established federal law, or was based on an unreasonable factual determination. He is not entitled to relief on Ground Eleven.

**Ground Twelve**

McCarthy argues that trial counsel was ineffective for not investigating and presenting mitigating evidence at his sentencing hearing. At sentencing, McCarthy expressed regret and remorse for his actions. (Doc. 8-2, Ex. 8, pp. 3-4, 11-12.) McCarthy told the court that in the 11 years between his earlier release from prison and the commission of this offense, he had been a productive taxpayer who contributed to his community. (*Id.*, p. 5.) McCarthy told the court that he got married, joined a church, and created and participated in numerous charitable programs. (*Id.*, pp. 5-6.) For instance, he described his work rebuilding homes in communities in need, ensuring that financial education be provided to high school students, creating and fundraising for a center for special needs children, and developing economic development programs. (*Id.*, pp. 6-11.) McCarthy told the court that he never intended "to put [himself] back in this situation." (*Id.*, p. 13.)

In arguing for a sentence at the lower end of the guidelines, counsel asserted that this case did not involve weapons, acts of violence, or overt threats. (*Id.*, pp. 14-15.) Counsel also noted that McCarthy cooperated with police upon his arrest and accepted responsibility. (*Id.*, p. 15.)

McCarthy contends that trial counsel "offered only arguments to the court as to

the rendering [of] a potential sentence, he did not offer to present any witnesses, mitigating evidence, or anything other than the self-serving testimony of the Petitioner." (Doc. 1, p. 15.) McCarthy claims that counsel failed to further "investigate" or "develop" the mitigating factors at sentencing. (*Id.*)

McCarthy agrees that he did not present this claim in his state postconviction motion. However, he asserts that he can overcome the resulting procedural default through application of the cause and prejudice exception under *Martinez*, 566 U.S. 1. As addressed, to establish cause under *Martinez*, a petitioner must demonstrate that the defaulted ineffective assistance of trial counsel claim "is a substantial one, which is to say that [he] must demonstrate that the claim has some merit." *Id.* at 14. A claim that does not have any merit or that is wholly without factual support is not substantial. *See id.* at 15-16.

The Court concludes that McCarthy has not established that *Martinez* applies to overcome the procedural default of this claim. McCarthy cannot show his claim is "substantial" because it is vague and conclusory in nature. McCarthy does not specify how counsel should have further investigated mitigating factors, what other witnesses counsel should have called, or what information counsel would have uncovered that differed from McCarthy's detailed testimony before the sentencing court. Thus, McCarthy does not establish that trial counsel was ineffective for not further investigating mitigation evidence, or that he was prejudiced as a result of counsel's actions. *See Tejada*, 941 F.2d at 1559. Accordingly, McCarthy does not show that his defaulted claim is substantial under *Martinez*. He does not show applicability of the

cause and prejudice exception to overcome the default of Ground Twelve. McCarthy does not argue or establish that the fundamental miscarriage of justice exception applies to overcome the default. Ground Twelve is barred from federal habeas review.

It is therefore **ORDERED** that McCarthy's petition (Doc. 1) is **DENIED**. The **CLERK** is directed to enter judgment against McCarthy and to **CLOSE** this case.

### Certificate Of Appealability<br>And Leave To Appeal *In Forma Pauperis* Denied

It is further **ORDERED** that McCarthy is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a COA must first issue. *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To obtain a certificate of appealability, McCarthy must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). McCarthy has not made the requisite showing. Finally, because McCarthy is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**ORDERED** in Tampa, Florida, on August 2, 2022.

Virginia M. Hernandez Covington
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE